UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRINA MARIE NIEVES,

    Plaintiff,

v.                                                                                           Case No: 8:16-cv-652-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff, Trina Marie Nieves, seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

**BACKGROUND**

    **A.**    **Procedural Background**

Plaintiff filed applications for disability insurance benefits and supplemental security income on June 22, 2012. (Tr. 20, 185–92.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 67–122, 124–34, 138–47.) Plaintiff then requested an administrative hearing. (Tr. 148–50.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 47–66.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 17–35.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals

Council denied. (Tr. 1–5, 14–16.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

B. **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1971, claimed disability beginning on May 1, 2012. (Tr. 52, 67.) Plaintiff has a high school education and a technical degree. (Tr. 29, 52.) Plaintiff's past relevant work experience included work as a respiratory therapist. (Tr. 28.) Plaintiff alleged disability due to bipolar disorder, anxiety, panic attacks, and back pain. (Tr. 67.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since May 1, 2012, the alleged onset date. (Tr. 22.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, depression, and anxiety. (Tr. 22.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23.) The ALJ then concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> to lift and carry fifty pounds occasionally and twenty-five pounds frequently. She can stand or walk six hours per eight-hour workday and sit six hours per workday, with unlimited pushing and pulling. The claimant has no manipulative, visual, communicative, postural or environmental limitations. She has some limitations with social functioning, but can respond appropriately to supervision, adapt to a work setting, and interact appropriately with coworkers, supervisors and the general public. The claimant has some limitations with attention and concentration which would limit pace and persistence occasionally, but not at a level that would significantly reduce productivity. She can hear, understand, learn, remember and carry out detailed work instructions, make work decisions, and can sustain attention/concentration sufficient to complete an eight-hour workday and five-day work-week. The claimant can use public transportation, be aware of common hazards in the workplace, and take appropriate precautions.

(Tr. 25.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that

reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 26.)

Applying Plaintiff's age, education, work experience, and RFC to the Medical-Vocational Guidelines ("Grids"), Rule 203.29, the ALJ found Plaintiff not disabled. (Tr. 29.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in

the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred by not finding Plaintiff's interstitial cystitis a severe impairment; (2) the ALJ failed to include certain

limitations in her RFC assessment; (3) the ALJ failed to explain whether she found Plaintiff unable to perform her past relevant work due to her mental or physical limitations; and (4) the ALJ erred at step five of the sequential process. For the reasons that follow, these contentions do not warrant reversal.

### A. Step Two of the Sequential Process

The ALJ concluded that Plaintiff has severe impairments of degenerative disc disease, depression, and anxiety. (Tr. 22.) Plaintiff contends that the ALJ erred at step two of the five-step analysis by not also finding her impairment of interstitial cystitis severe. (Dkt. 15 at 11–12.)

At step two of the evaluation process, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(c)). In this step of the sequential process, the claimant bears the burden of proof that he or she suffers from a severe impairment or combination of impairments. *Gibbs v. Barnhart*, 156 F. App'x 243, 246 (11th Cir. 2005).

If an ALJ errs in finding that a claimant's additional impairments are non-severe, such error is harmless when the ALJ finds that a claimant has a severe impairment. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010). This is because the ALJ has determined that step two of the analysis has been met and proceeds in the disability analysis. *Id.* ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment," which is all that is required at step two of the sequential analysis); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F.

App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [claimant] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process.").

The ALJ is, however, "required to consider all impairments, regardless of severity, in conjunction with one another in performing the *latter steps* of the sequential evaluation." *Tuggerson-Brown*, 572 F. App'x at 951 (emphasis added). The ALJ's failure to consider the combination of a claimant's impairments requires reversal. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985). As examples, an ALJ's statements that he considered whether claimant's impairment or combination of impairments met a Listing or that he considered all symptoms in determining the claimant's RFC are sufficient "to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 F. App'x at 951 (finding the ALJ's discussion of the combined effects of claimant's impairments sufficient because the ALJ discussed the non-severe impairments in the ALJ's assessment of claimant's RFC); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (emphasis in original) (quoting the ALJ and finding that it was "clear" that the ALJ considered claimant's impairments in combination because the ALJ stated that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity'").

In this case, at step two of the sequential evaluation process, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, depression, and anxiety. (Tr. 22.) Thus, the ALJ found in Plaintiff's favor at step two and proceeded to the next steps of the sequential evaluation process to determine whether Plaintiff was disabled. Because the ALJ found that Plaintiff had severe impairments and thus proceeded beyond step two, any error in failing to find that Plaintiff suffers from the *additional* severe impairment of interstitial cystitis was harmless. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013).

Further, the ALJ's findings at step three of the sequential process demonstrate that the ALJ considered all of Plaintiff's impairments in combination. At step three of the sequential process, the ALJ properly considered all of Plaintiff's relevant impairments and found that Plaintiff did not have an "impairment or combination of impairments" that met or equaled a Listing (Tr. 23), which is sufficient to show that the ALJ considered the combined effect of Plaintiff's impairments. *Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). Because the ALJ found that Plaintiff has severe impairments, the ALJ's determination that Plaintiff's interstitial cystitis is non-severe, even if erroneous, was harmless. Further, the ALJ sufficiently considered whether the combination of Plaintiff's impairments rendered Plaintiff disabled because the ALJ considered all of Plaintiff's impairments, severe and non-severe, at step three of her analysis. Accordingly, Plaintiff's first contention does not warrant reversal.

**B.     Plaintiff's RFC**

Next, Plaintiff raises several issues regarding the ALJ's RFC determination. (Dkt. 15 at 13–21.) Specifically, Plaintiff argues that the ALJ's RFC failed to account for Plaintiff's need for frequent bathroom breaks and limitations from her mental conditions. In evaluating Plaintiff's

limitations from her mental conditions, Plaintiff argues that the ALJ did not properly evaluate the opinions of Plaintiff's treating physician and two state agency physicians.

First, Plaintiff argues the ALJ's RFC did not account for Plaintiff's need for frequent bathroom breaks due to her condition of interstitial cystitis. The ALJ evaluated this condition in her step-two analysis of whether Plaintiff's impairments are severe. (Tr. 22–23.) The ALJ found Plaintiff's interstitial cystitis non-severe because there was no evidence that it created "anything other than minimal work-related limitations." (Tr. 22.) The ALJ evaluated Plaintiff's testimony regarding her need to frequently urinate and the medical evidence regarding stones in Plaintiff's kidney and gallbladder and her treatment for her symptoms of frequent urination, pain, and urinary infections. (Tr. 23.) Further, the ALJ evaluated the letter of Plaintiff's treating physician, Dr. Osvaldo Padron. (Tr. 23) Dr. Padron opined that Plaintiff's interstitial cystitis required Plaintiff to take "frequent bathroom breaks." (Tr. 600.) The ALJ adopted Dr. Padron's opinion about Plaintiff's need for frequent bathroom breaks, reasoning that Dr. Padron "did not suggest that [Plaintiff] required excessive bathroom breaks." (Tr. 23.) The ALJ concluded that Plaintiff's interstitial cystitis is non-severe because the evidence did not demonstrate that it presented Plaintiff with significant work-related limitations. (Tr. 23.)

An impairment is non-severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities "mean the abilities and aptitudes necessary to do most jobs," and include the following examples: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.*

§ 404.1522(b). A claimant's RFC is the "most [the claimant] can still do" despite his or her limitations. *Id.* § 404.1545(a)(1). The ALJ considers the claimant's severe and non-severe impairments. *Id.* § 404.1545(a)(2).

Here, the ALJ thoroughly evaluated Plaintiff's interstitial cystitis and its effect on Plaintiff's ability to perform work-related activities. Specifically, the ALJ considered Plaintiff's symptom of frequent urination and concluded that the evidence showed that she would not require excessive bathroom breaks and, therefore, this symptom would not pose significant work-related limitations. Accordingly, contrary to Plaintiff's argument, there was no limitation for the ALJ to include in the RFC assessment regarding Plaintiff's need for bathroom breaks.

Next, Plaintiff argues, without specificity, that "[t]here were also failures by the ALJ regarding Plaintiff's mental conditions when formulating a [RFC]." (Dkt. 15 at 13.) First, Plaintiff argues that the ALJ stated inaccurately that Plaintiff did not seek mental health treatment from the alleged onset date through October 13, 2012. (Dkt. 15 at 14; See Tr. 27.) Plaintiff argues that this statement shows that the ALJ inferred a corresponding lack of severity of her mental conditions. Plaintiff's argument is not supported by the record. First, the ALJ's statement is not inaccurate because a consultative examiner noted, in August 2012, that Plaintiff's "last formal involvement with mental health/psychiatric care reportedly occurred 2 years prior to this examination date." (Tr. 311–12.) Further, there is no indication in the ALJ's decision that she interpreted Plaintiff's lapse in treatment in the manner Plaintiff argues. Finally, the ALJ found Plaintiff's depression and anxiety to be severe impairments. (Tr. 22.)

Next, Plaintiff argues that the ALJ's consideration of Plaintiff's demeanor at the hearing was improper. (Dkt. 15 at 14–15.) Specifically, the ALJ noted that, at the hearing, Plaintiff was attentive, cooperative, relaxed, and had no problem with her memory. (Tr. 24, 26.) Contrary to

Plaintiff's argument, "[t]he ALJ is not prohibited from considering the claimant's appearance and demeanor during the hearing," and this was not the ALJ's sole reason for discrediting Plaintiff's testimony about her pain and other symptoms. *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (internal quotations omitted). Also, to the extent Plaintiff argues that the ALJ misstated Plaintiff's testimony regarding the side effects of her psychiatric medications (Dkt. 15 at 15), other than Plaintiff's testimony, her mother's testimony, and the letter of Plaintiff's friend (Tr. 302), Plaintiff has not cited "evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366–67 (11th Cir. 2010) ("Apart from her own subjective statements, there is no evidence in the record that any of [claimant's] other symptoms actually were caused by her medications.").

Next, Plaintiff argues that the ALJ failed to articulate good cause for not including all of the limitations expressed by Plaintiff's treating physician, Dr. Nicole Riddell, in a mental RFC assessment. (Dkt. 15 at 17–21.) Dr. Riddell completed a questionnaire for Plaintiff's application for benefits, in which she opined that Plaintiff's conditions would prevent her from working a normal work week of forty hours. (Tr. 555–56.) Further, Dr. Riddell completed a mental RFC assessment, finding Plaintiff either moderately or markedly limited in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption. (Tr. 551–54.)

Plaintiff's argument concerning the weight properly accorded to Dr. Riddell's opinion is belied by her brief to the Appeals Council, in which she requested review of the ALJ's decision. In her brief, Plaintiff stated that "it is true that the claimant only saw Dr. Riddell on one occasion at the time she completed the [mental RFC assessment]." (Tr. 307.) Therefore, at the time Dr. Riddell gave her opinion, Plaintiff and Dr. Riddell "did not have a longstanding relationship nor

did [s]he provide lengthy or frequent treatment." *Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 698 (11th Cir. 2006) (ruling that the ALJ did not err by failing to accord a physician's opinion controlling weight where the physician treated the claimant only twice after the alleged onset date, as the physician did not have a longstanding relationship with claimant); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 488 (11th Cir. 2012) (finding that the opinion of a physician who examined the claimant on a single occasion and did not treat him was not entitled to deference by the ALJ); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that physicians' opinions were "not entitled to deference because as one-time examiners they were not treating physicians").

The ALJ, however, was required to state, with particularity, the weight afforded to Dr. Riddell's opinions and the reasons for such assignment of weight. *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (internal quotation and citation omitted). The ALJ summarized Dr. Riddell's opinions and accorded them little weight. (Tr. 28.) The ALJ reasoned that Dr. Riddell's opinions are inconsistent with the record evidence as a whole and Dr. Riddell's notes from the one time Dr. Riddell treated Plaintiff when Plaintiff was discharged from the hospital. (Tr. 391–92.) Accordingly, because the ALJ stated the weight accorded to Dr. Riddell's opinion and her reasoning for according Dr. Riddell's opinions little weight, the ALJ did not err.

Finally, Plaintiff argues that the ALJ erred by adopting the opinions of two state agency mental health consultants over Dr. Riddell's opinions. The ALJ found their opinions—that Plaintiff had mild limitations with activities of daily living and moderate limitations with social functioning, concentration, persistence, and pace—to be more consistent with the objective mental health evidence. (Tr. 28.) Plaintiff is correct that opinions of non-examining physicians cannot serve as the basis for according a treating physician's opinion less than substantial weight when

the non-examining physician's opinion contradicts the treating physician's opinion. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). However, Plaintiff's argument is inapposite. As determined earlier, because Dr. Riddell treated Plaintiff on only one occasion before she rendered her opinion, her opinion was not entitled to substantial weight.

And, importantly, as Defendant argues (Dkt. 22 at 14), the ALJ's decision demonstrates that the consultants' opinions were not the sole basis for the ALJ's findings. Specifically, in evaluating Plaintiff's claims regarding her limitations caused by her mental conditions, in addition to the opinions of Dr. Riddell and the consultants, the ALJ considered Plaintiff's testimony (Tr. 27), opinions of disability examiners Dr. Peter Bursten and Dr. Robin Hughes (Tr. 27), and Plaintiff's mental health treatment in 2012 and 2013 at a medical facility named Gracepoint (Tr. 27–28.) In her summary of these records, the ALJ noted that Plaintiff had several hospitalizations due to her mental conditions and overdoses of medications but that her treatment notes showed that her symptoms improved with medication, and her mood, behavior, and affect were largely normal during her examinations. (Tr. 27.) Accordingly, while the ALJ limited Plaintiff's RFC, she determined that Plaintiff's limitations were not such that her ability to work would be significantly reduced. (Tr. 28.) For these reasons, Plaintiff's contentions regarding the ALJ's RFC assessment do not warrant reversal.

### C. Step Four of the Sequential Process

Next, Plaintiff argues that the ALJ erred, at step four of the sequential process, in her finding that Plaintiff could not perform her past relevant work as a respiratory therapist. (Dkt. 15 at 21–23.) While Plaintiff agrees that she cannot perform her past relevant work, she argues that the ALJ erred by failing to state whether mental or physical limitations prevented Plaintiff from performing her past relevant work. (Dkt. 15 at 22.) However, as Defendant argues (Dkt. 22 at

15), if the ALJ's findings at step four are deficient, such deficiency is harmless because the ALJ found in Plaintiff's favor and continued with the sequential process. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination."). Further, remand for further findings "would be a wasteful corrective exercise" because "no further findings could be made that would alter the ALJ's decision." *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (internal quotation omitted). Accordingly, this contention does not warrant reversal.

### D. Step Five of the Sequential Process

Finally, Plaintiff argues the additional limitations she argued the ALJ failed to include in her RFC assessment (*see* discussion *supra* Section B), were non-exertional limitations. (Dkt. 15 at 24.) Therefore, Plaintiff argues, because she had non-exertional limitations, the ALJ's exclusive use of the Grids was an error.

At step five of the sequential evaluation process, the ALJ must determine whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience. *Owens v. Comm'r of Soc. Sec.*, 508 F. App'x 881, 883 (11th Cir. 2013) (per curiam). The Commissioner bears the burden at step five to show the existence of such jobs. *Id.* In determining whether the claimant has the ability to adjust to other work in the national economy, the ALJ may either: (1) apply the Grids or (2) consult a vocational expert. *Id.*

Exclusive reliance on the Grids is not appropriate if either of the following conditions exist: (1) the claimant is unable to perform a full range of work at a given residual functional level; or (2) the claimant has non-exertional impairments that significantly limit basic work skills. *Phillips*,

357 F.3d at 1242. "The first condition that requires the ALJ to consult a vocational expert is when the claimant's *exertional* limitations prevent the claimant from performing a full range of employment." *Id.* (emphasis in original). Exertional limitations are limitations on a person's ability to meet the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling at the level required by the level of work at issue. 20 C.F.R § 404.1569a(b). Here, the ALJ found Plaintiff capable of performing the full range of work at the medium exertional level. (Tr. 29.) Specifically, the ALJ found Plaintiff capable of lifting and carrying fifty pounds occasionally and twenty-five pounds frequently (Tr. 25), and the medium physical exertional level "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," 20 C.F.R. § 404.1567(c).

Where, as here, the ALJ concludes that the claimant can perform a full range or unlimited types of work at a given exertional level despite any exertional limitations, the ALJ must next determine whether the claimant's non-exertional limitations affect the claimant's ability to secure employment at the given work level in the national economy. *Phillips*, 357 F.3d at 1242. This requires the ALJ to determine whether a claimant's "nonexertional impairments significantly limit [the claimant's] basic work skills." *Phillips*, 357 F.3d at 1243. Non-exertional limitations affect a person's ability to meet the demands of jobs other than strength demands. 20 C.F.R. § 404.1569a(c). Examples of non-exertional limitations include, without limitation, difficulty working due to nervousness, anxiety, depression, maintaining attention or concentration, understanding or remembering detailed instructions, tolerating dust or fumes, or performing manipulative or postural functions. *Id.* § 404.1569a(c)(1). If the ALJ determines that the claimant's non-exertional limitations do not significantly limit the claimant's basic work skills at a given work level, then the ALJ may rely on the Grids. *Phillips*, 357 F.3d at 1243. If, however,

the ALJ determines that the claimant's non-exertional limitations significantly limit his or her basic work skills at a given work level, then the ALJ must consult a vocational expert. *Id.*

Plaintiff argues that had the ALJ included the non-exertional limitations the ALJ allegedly erroneously omitted from the RFC (*see* discussion *supra* Section B) in the RFC assessment, use of a vocational expert would have been required. (Dkt. 15 at 24.) The Court, however, has determined that the ALJ did not err in her RFC assessment. *See* discussion *supra* Section B. While the ALJ found that Plaintiff had "some limitations with attention and concentration which would limit pace and persistence occasionally," she concluded that these limitations were "not at a level that would significantly reduce productivity." (Tr. 25, 28.) Accordingly, Plaintiff's final contention does not warrant reversal because the ALJ did not err by relying on the Grids at step five of the sequential process. *See Stone v. Comm'r of Soc. Sec.*, 503 F. App'x 692, 694 (11th Cir. 2013) (finding that the ALJ's reliance on the Grids was not erroneous where the ALJ determined that the claimant "could perform basic work activities in a regular work setting, 'without significant interference from his non-exertional limitations,'" and that the claimant's "non-exertional limitations were manageable with conservative medical care and medications").

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner

and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on June 14, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record